AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| A Facebook account, more particularly described in Attachment A | ) ) ) |

FILED _____ LODGED
_____ RECEIVED

OCT 12 2018

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY                                          DEPUTY

Case No.

MJ18-5235

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, attached hereto and incorporated by reference herein.

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, attached hereto and incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 USC 841(a)(1) and 846 | Distribution of and Conspiracy to Distribute Controlled Substances |

The application is based on these facts:

See Affidavit of DEA Special Agent Steve Meyer.

☑ Continued on the attached sheet.

☑ Delayed notice of __365__ days (give exact ending date if more than 30 days: __10/11/2019__ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Steve Meyer, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: ___10/12/18___

_____
*Judge's signature*

City and state:  Tacoma, Washington                   J. Richard Creatura, United States Magistrate Judge
*Printed name and title*

**AFFIDAVIT**

STATE OF WASHINGTON     )
                                  )   ss
COUNTY OF PIERCE          )

      I, Steven Meyer, Special Agent, Drug Enforcement Administration (DEA), United States Department of Justice, being first duly sworn on oath, depose and state:

## MY BACKGROUND AND QUALIFICATIONS

      1.     I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

      2.     I am a Special Agent with the Drug Enforcement Administration (DEA), and have been since March 2017. I am currently assigned to the Seattle Field Division, Tacoma Resident Office. Prior to my employment with the DEA, I worked as a Uniformed Officer with the Secret Service in Washington D.C., from June 2006 to April 2009. I received formal training at the DEA Basic Agent Training in Quantico, Virginia. The four-month Basic Academy included comprehensive, formalized instruction in, among other things: basic narcotic investigations, drug identification and detection, familiarization with United States narcotics laws, financial investigations and money laundering, identification and seizure of drug-related assets, organized crime investigations, physical and electronic surveillance, and undercover operations.

      3.     During the course of my law enforcement career, I have been involved in investigations of numerous criminal offenses, including the offenses involved in this current investigation. I have participated in criminal investigations of illicit drug trafficking organizations, ranging from street-level dealers to major dealers, to include Mexico-based drug trafficking organizations. These investigations have also included the unlawful importation, possession with intent to distribute, and distribution of controlled substances; the related laundering of monetary instruments; the conducting of monetary

AFFIDAVIT OF Steve Meyer - 1
USAO 2017R01238

1  transactions involving the proceeds of specified unlawful activities; and conspiracies

2  associated with criminal narcotics offenses.  These investigations have included use of

3  the following investigative techniques: confidential informants; undercover agents;

4  analysis of pen register, trap and trace, and toll records; physical and electronic

5  surveillance; wiretaps; and the execution of search warrants.  I have had the opportunity

6  to monitor, listen to, review transcripts and line sheets (prepared by linguists)

7  documenting the content of intercepted conversations involving the trafficking of

8  cocaine, heroin, methamphetamine, and other narcotics, by persons who used some form

9  of code to thwart law enforcement.  I have also interviewed defendants at the time of

10  their arrests and have debriefed, spoken with, or interviewed numerous drug dealers or

11  confidential sources (informants) at proffer interviews who were experienced in speaking

12  in coded conversations over the telephone.  I have gained knowledge regarding the

13  various methods, techniques, codes, and/or jargon used by drug traffickers in the course

14  of their criminal activities, including their use of cellular telephones and other electronic

15  devices to facilitate communications while avoiding law enforcement scrutiny.

### PURPOSE OF AFFIDAVIT

17    4.  This Affidavit is submitted in support of an application for a search warrant

18  under Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A)

19  to require Facebook to disclose to the government records and other information in its

20  possession, pertaining to the subscriber or customer associated with the following

21  Facebook account (referred to as SUBJECT ACCOUNT 10):

22      a.  Facebook user ID steve.larson.750983, registered under the name

23  STEVE LARSON.

24    5.  All of the requested information is stored at premises owned, maintained,

25  controlled, or operated by Facebook, a social networking company headquartered in

26  Menlo Park, California.  The information to be searched is described in the following

27  paragraphs and in Attachment B.  This is the first application for a search warrant for

28  SUBJECT ACCOUNT 10 in this investigation.

AFFIDAVIT OF Steve Meyer - 2
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    6.    Agents have identified Juan Andres CASTRO Valenzuela as a drug

2  distribution coordinator operating out of Los Mochis, Mexico, along with his brother.

3  Investigators believe the CASTRO brothers are directing drug operations in Western

4  Washington, and possibly elsewhere.  In order to communicate with distributors and drug

5  customers, the CASTROs utilize a variety of applications, to include Facebook.  To date,

6  agents have identified nine Facebook 'Subject Accounts' connected to the CASTROs,

7  and have executed search warrants on the accounts to review their contents.  As described

8  herein, the contents of the Subject Accounts have confirmed agents' beliefs regarding the

9  CASTRO brothers and their drug trafficking activities.  Recently, agents identified a

10  tenth 'Subject Account,' under the username STEVE LARSON, which they also believe

11  the CASTRO brothers are using for drug trafficking purposes.  Through this Affidavit

12  and Application, investigators are requesting authorization to search the contents of

13  'SUBJECT ACCOUNT 10.'

14                    **FACEBOOK INFORMATION STORAGE**

15    7.    I am aware from my experience and training, and consultation with other

16  investigators, of the following information about Facebook:

17    8.    Facebook owns and operates a free-access social networking website of the

18  same name, accessed at http://www.facebook.com.  Facebook allows its users to establish

19  accounts with Facebook, and users can then use their accounts to share written news,

20  photographs, videos, and other information with other Facebook users, and sometimes

21  with the general public.

22    9.    Facebook asks users to provide basic contact and personal identifying

23  information to Facebook, either during the registration process or thereafter.  This

24  information may include the user's full name, birth date, gender, contact e-mail

25  address(es), Facebook passwords, Facebook security questions and answers (for

26  password retrieval), physical address (including city, state, and zip code), telephone

27  numbers, screen names, websites, and other personal identifiers.  Facebook also assigns a

28  user identification number to each account.

AFFIDAVIT OF Steve Meyer - 3
USAO 2017R01238

1       10.    I know from speaking with other law enforcement that "cookies" are small

2  files placed by a server (such as those used by Facebook) on a device to track the user

3  and potentially verify a user's authentication status across multiple sites or

4  webpages.  This cookie could be unique to a particular account (e.g., the Facebook

5  account) or to a given device (e.g., the particular phone used to access the Facebook

6  account).  The next time a user visits a particular site or server, the server will ask for

7  certain cookies to see if the server has interacted with that user before.  Cookies can also

8  be used to determine "machine cookie overlap," or multiple accounts that have been

9  accessed by the same individual machine (e.g., two Facebook accounts that have been

10  accessed on the same phone).  The machine cookie overlap thus allows Facebook to track

11  accounts that are "linked" to each other because the same user account (username on a

12  computer) on the same device accessed multiple Facebook accounts.  This can identify

13  either multiple Facebook accounts used by the same person or different people sharing

14  the same user account and device.  In either case, the machine cookie overlap means that

15  the users of the linked accounts are the same person or two people in close proximity to

16  each other (by virtue of them using the same device).

17       11.    Facebook users may join one or more groups or networks to connect and

18  interact with other users who are members of the same group or network.  Facebook

19  assigns a group identification number to each group.  A Facebook user can also connect

20  directly with individual Facebook users by sending each user a "Friend Request."  If the

21  recipient of a "Friend Request" accepts the request, then the two users will become

22  "Friends" for purposes of Facebook and can exchange communications or view

23  information about each other.  Each Facebook user's account includes a list of that user's

24  "Friends" and a "News Feed," which highlights information about the user's "Friends,"

25  such as profile changes, upcoming events, and birthdays.

26       12.    Facebook users can select different levels of privacy for the

27  communications and information associated with their Facebook accounts.  By adjusting

28  these privacy settings, a Facebook user can make information available only to himself or

AFFIDAVIT OF Steve Meyer - 4
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   herself, to particular Facebook users, or to anyone with access to the Internet, including

2   people who are not Facebook users.  A Facebook user can also create "lists" of Facebook

3   friends to facilitate the application of these privacy settings.  Facebook accounts also

4   include other account settings that users can adjust to control, for example, the types of

5   notifications they receive from Facebook.

6        13.    Facebook users can create profiles that include photographs, lists of

7   personal interests, and other information.  Facebook users can also post "status" updates

8   about their whereabouts and actions, as well as links to videos, photographs, articles, and

9   other items available elsewhere on the Internet.  Facebook users can also post information

10  about upcoming "events," such as social occasions, by listing the event's time, location,

11  host, and guest list.  In addition, Facebook users can "check in" to particular locations or

12  add their geographic locations to their Facebook posts, thereby revealing their geographic

13  locations at particular dates and times.  A particular user's profile page also includes a

14  "Wall," which is a space where the user and his or her "Friends" can post messages,

15  attachments, and links that will typically be visible to anyone who can view the user's

16  profile.

17       14.    Facebook allows users to upload photos and videos.  It also provides users

18  the ability to "tag" (i.e., label) other Facebook users in a photo or video.  When a user is

19  tagged in a photo or video, he or she receives a notification of the tag and a link to see the

20  photo or video.  For Facebook's purposes, the photos and videos associated with a user's

21  account will include all photos and videos uploaded by that user that have not been

22  deleted, as well as all photos and videos uploaded by any user that have that user tagged

23  in them.

24       15.    Facebook users can exchange private messages on Facebook with other

25  users.  These messages, which are similar to e-mail messages, are sent to the recipient's

26  "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well

27  as other information.  Facebook users can also post comments on the Facebook profiles

28  of other users or on their own profiles; such comments are typically associated with a

AFFIDAVIT OF Steve Meyer - 5
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   specific posting or item on the profile.  In addition, Facebook has a Chat feature that

2   allows users to send and receive instant messages through Facebook.  These chat

3   communications are stored in the chat history for the account.  Facebook also has a Video

4   Calling feature, and although Facebook does not record the calls themselves, it does keep

5   records of the date of each call.

6        16.    If a Facebook user does not want to interact with another user on Facebook,

7   the first user can "block" the second user from seeing his or her account.

8        17.    Facebook has a search function that enables its users to search Facebook for

9   keywords, usernames, or pages, among other things.

10        18.    Each Facebook account has an activity log, which is a list of the user's

11   posts and other Facebook activities from the inception of the account to the present.  The

12   activity log includes stories and photos in which the user has been tagged, as well as

13   connections made through the account, such as "liking" a Facebook page or adding

14   someone as a friend.  The activity log is visible to the user but cannot be viewed by

15   people who visit the user's Facebook page.

16        19.    Facebook Notes is a blogging feature available to Facebook users, and it

17   enables users to write and post notes or personal web logs ("blogs"), or to import their

18   blogs from other services, such as Xanga, LiveJournal, and Blogger.

19        20.    In addition to the applications described above, Facebook also provides its

20   users with access to thousands of other applications on the Facebook platform.  When a

21   Facebook user accesses or uses one of these applications, an update about that the user's

22   access or use of that application may appear on the user's profile page.

23        21.    Some Facebook pages are affiliated with groups of users, rather than one

24   individual user.  Membership in the group is monitored and regulated by the

25   administrator or head of the group, who can invite new members and reject or accept

26   requests by users to enter.  Facebook can identify all users who are currently registered to

27   a particular group and can identify the administrator and/or creator of the group.

28   Facebook uses the term "Group Contact Info" to describe the contact information for the

AFFIDAVIT OF Steve Meyer - 6
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  group's creator and/or administrator, as well as a PDF of the current status of the group

2  profile page.

3      22.    Facebook uses the term "Neoprint" to describe an expanded view of a given

4  user profile.  The "Neoprint" for a given user can include the following information from

5  the user's profile:  profile contact information; News Feed information; status updates;

6  links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists,

7  including the friends' Facebook user identification numbers; groups and networks of

8  which the user is a member, including the groups' Facebook group identification

9  numbers; future and past event postings; rejected "Friend" requests; comments; gifts;

10  pokes; tags; and information about the user's access and use of Facebook applications.

11      23.    Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP

12  address.  These logs may contain information about the actions taken by the user ID or IP

13  address on Facebook, including information about the type of action, the date and time of

14  the action, and the user ID and IP address associated with the action.  For example, if a

15  user views a Facebook profile, that user's IP log would reflect the fact that the user

16  viewed the profile, and would show when and from what IP address the user did so.

17      24.    Social networking providers like Facebook typically retain additional

18  information about their users' accounts, such as information about the length of service

19  (including start date), the types of service utilized, and the means and source of any

20  payments associated with the service (including any credit card or bank account number).

21  In some cases, Facebook users may communicate directly with Facebook about issues

22  relating to their accounts, such as technical problems, billing inquiries, or complaints

23  from other users.  Social networking providers like Facebook typically retain records

24  about such communications, including records of contacts between the user and the

25  provider's support services, as well as records of any actions taken by the provider or

26  user as a result of the communications.

27      25.    Therefore, the computers of Facebook are likely to contain all the material

28  described above, including stored electronic communications and information concerning

AFFIDAVIT OF Steve Meyer - 7
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  subscribers and their use of Facebook, such as account access information, transaction

2  information, and other account information.  I believe such information is likely to

3  constitute evidence of the drug trafficking crimes currently under investigation.

4  **SUMMARY OF PROBABLE CAUSE**

5      26.    The information set forth in this Affidavit consists of information I have

6  gathered and observed firsthand through the course of this investigation to date, as well

7  as information relayed to me by other law enforcement personnel, my review of law

8  enforcement reports, interviews of witnesses, and my review and analysis of toll records.

9  Since I am submitting this Affidavit for the limited purpose of obtaining authorization to

10  search SUBJECT ACCOUNT 10 as described herein, I have not included every fact

11  known to me concerning this investigation.  I have set forth only the facts that I believe

12  are essential to establish the necessary foundation for the issuance of such warrant.

13  *Background Information Regarding Investigation*

14      27.    CS1 agreed to cooperate with law enforcement in 2017, in exchange for

15  judicial considerations.  CS1 was arrested by members of the Bremerton Police

16  Department (BPD) Special Operations Group (SOG) for his/her involvement in drug

17  trafficking.  CS1 cooperated with SOG and provided them with information about a

18  group of Mexican drug traffickers who were distributing large amounts of heroin in the

19  Puget Sound region.  CS1 advised SOG that he/she had been selling various controlled

20  substances for several years and had been in contact with several of the people within this

21  group of Mexican drug traffickers, which agents have identified as the CASTRO DTO.

22      28.    Within that organization, CS1 connected with a prominent drug trafficker

23  whom the CS knew as "Juan" or "Jose."  CS1 believed the individual he/she knew as

24  "Juan" was the local leader of the drug distribution at that time, and was later promoted

25  to a larger role in the DTO.  BPD Detective Jordan Ejde located a Facebook account

26  under the name of "Juan Andres CASTRO Valenzuela" (Subject Account 2, the target of

27  a prior search warrant issued by this Court)) that CS1 and other local suspected drug

28  dealers were associated with.  Det. Ejde questioned CS1 about the account and CS1

AFFIDAVIT OF Steve Meyer - 8
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 confirmed CASTRO was the male whom he/she referred to as "Juan" or "Jose." CS1

2 also showed Det. Ejde messages confirming that CASTRO had been in (then) recent

3 contact with the CS, using Subject Account 2. According to CS1 and the Facebook data

4 he/she provided, CS1 had been talking to CASTRO via Facebook Messenger for

5 purposes of making drug transactions since approximately June of 2016.

6      29.    A review of the CS's Facebook account showed CASTRO also contacted

7 CS1 from additional Facebook accounts under the names of "REBECA SPENCER"

8 (Subject Account 5), "ANNEL BAKER" (Subject Account 4), and "KATHERINE

9 THOMAS" (Subject Account 1). All three of those accounts have also been the target

10 search warrants issued by this Court. A review of CS1's phone showed CASTRO also

11 used Mexican phone numbers 52-668-199-4039, 52-668-248-4230, 52-668-225-5890,

12 and 52-668-199-5533 to communicate with CS1 via text message and voice calls.

13 Subject Account 1 and phone number 52-668-199-4039 were CASTRO's most current

14 methods of drug related communications with CS1 (at that time).

15      30.    Det. Ejde and Special Agent (SA) Anthony DelVecchio confirmed

16 CASTRO's identity via the Washington State Department of Licensing (WADOL).

17 Specifically, CASTRO's WADOL photograph matches that of the individual depicted on

18 Subject Account 2. Furthermore, according to a law enforcement database, CASTRO

19 was involved as a suspected "cell head" for heroin distribution in the Everett area during

20 a DEA investigation that took place in 2012. Special Agent DelVecchio researched this

21 prior DEA case and found that CASTRO was, in fact, the primary target of investigation

22 within that case.

23      31.    Based on how CASTRO first interacted with CS1, I believe CASTRO used

24 Subject Account 2 for initially contacting his suspected drug redistributors/customers.

25 When CASTRO first contacted the CS via Facebook Messenger, he used Subject

26 Account 2. After a brief introduction utilizing Subject Account 2, CASTRO switched

27 over to a more discrete account(s), e.g., Subject Account 4 and/or Subject Account 5, for

28 the actual organizing of the suspected drug transactions. I believe that by having a

AFFIDAVIT OF Steve Meyer - 9
USAO 2017R01238

1  picture of himself [CASTRO] as the account user for Subject Account 2, it helped his

2  redistributors/customers recognize him in addition to him building a rapport with them.

3       32.    CASTRO used Subject Account 1, Subject Account 2, Subject Account 4,

4  Subject Account 5, and an account under the name "ALISSA KEYSER" (Subject

5  Account 6, also the target of a search warrant issued by this Court), as well as various

6  telephone numbers, to set up drug deals with CS1.

7       33.    SOG used CS1 to conduct six controlled buys of suspected heroin from the

8  CASTRO DTO.  Once the DEA began working with SOG, investigators used CS1 to

9  conduct a seventh controlled purchase toward the end of October 2017.  CS1 was able to

10  introduce an undercover DEA agent (UC) to the CASTRO DTO towards the end of 2017.

11       34.    CS1's criminal history includes a felony conviction for

12  Manufacture/Deliver a Schedule I/II Narcotic in 2013, gross misdemeanor convictions

13  for Fourth Degree Assault in 2015 and Third Degree Malicious Mischief in 2011, as well

14  as misdemeanor convictions for Third Degree Driving With a Suspended or Revoked

15  License in 2018 and 2008, Indecent Exposure in 2013, and Third Degree Malicious

16  Mischief in 2006.

17       35.    Unfortunately, CS1 was battling heroin addiction for most of the time

18  he/she was working with agents.  Agents provided CS1 with access to drug treatment

19  programs and got CS1 enrolled in a rehabilitation center; they even arranged for atypical

20  expense reimbursements for CS1.  Rather than cash reimbursement for expenses incurred

21  during government operations, agents provided CS1 with food cards or gasoline—things

22  that were not readily convertible into cash.  Agents did so at the request of CS1, so he/she

23  would not be tempted to purchase drugs with any excess money.  These methods worked

24  for a time, and CS1 successfully completed several months of his/her rehabilitation

25  program before staff asked CS1 to leave due to his/her attitude problems and problems

26  with other rehabilitation patients.

27       36.    CS1 continued to help agents by providing information about the DTO and

28  helping to build the UC's reputation.  However, CS1 relapsed into heroin use in the

AFFIDAVIT OF Steve Meyer - 10
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   spring of 2018.  This time, CS1 quite rapidly spiraled downward into an almost paranoid

2   and delusional state.  Agents determined they could no longer use CS1 for any

3   investigative purposes, but tried once again to get CS1 some help with his/her drug

4   problem.  Unfortunately, CS1 was not as amenable on this occasion and shunned agents'

5   attempts at providing assistance.  In May 2018, local police arrested CS1 and charged

6   him/her with residential burglary (felony) and driving with a suspended or revoked

7   license (misdemeanor).  SOG deactivated CS1 in May 2018 due to CS1's substance

8   abuse issues.  However, agents found CS1's information to be reliable during the time

9   agents utilized him/her to gather information.

**Undercover Controlled Purchase #1 Utilizing Subject Account 1**

11      37.    In early November 2017, SOG provided DEA agents, including an

12   undercover agent (the UC) with the various phone numbers and Facebook accounts they

13   believed CASTRO and SARMIENTO used for drug trafficking purposes.

14      38.    On November 14, 2017, CS1 sent the UC an invitation to join a group

15   Facebook Messenger chat session, which linked the UC in communication with Subject

16   Account 1.  CASTRO and the UC then engaged in conversation regarding CASTRO's

17   pricing for heroin.  On November 16, 2017, agents conducted an undercover purchase of

18   heroin from CASTRO (through one of the DTO's couriers) in Tacoma, Washington.  The

19   UC contacted CASTRO on 52-668-199-4039 (Target Telephone 1 or TT1) and through

20   Subject Account 1 prior to this transaction in order to facilitate the meeting.

21      39.    After the UC met with the courier and the transaction was completed,

22   agents transported the suspected heroin to the DEA Tacoma Resident Office where it was

23   weighed at approximately 87.4 gross grams.

**Undercover Controlled Purchase #2 Utilizing Subject Account 1**

25      40.    On November 27, 2017, the UC received a text message from CASTRO

26   (TT1).  During this conversation, the UC and CASTRO discussed a future drug

27   transaction for four ounces of heroin that would later occur on November 30, 2017.  On

28   November 30, the UC again met with the DTO's courier, this time in Federal Way,

AFFIDAVIT OF Steve Meyer - 11
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   Washington. Prior to the controlled buy, the UC initiated a Facebook Messenger

2   conversation with CASTRO through Subject Account 1. Using Subject Account 1,

3   CASTRO told the UC that he changed the meet location from the Tacoma Mall to

4   Federal Way, Washington. After the UC arrived at the new meeting location, he/she

5   received two calls from CASTRO. Of note, Facebook Messenger has telephone call

6   capabilities as well as video chat. The first phone call came through Facebook

7   Messenger under Subject Account 1, and the second call came from TT1.

8       41.     The courier eventually arrived in at the new meeting location, and the UC

9   and the courier completed the transaction. Agents transported the suspected heroin to the

10  TRO where it was weighed at approximately 136.1 gross grams.

11      42.     Shortly after the UC and the courier parted ways, CASTRO sent a large

12  "thumbs up" graphic to the UC via Subject Account 1, indicating a successful drug

13  transaction.

14  **Undercover Controlled Purchase #3 Utilizing Subject Account 1**

15      43.     On December 15, 2017, at 11:16 a.m., the UC attempted to call CASTRO

16  via Subject Account 1 on Facebook Messenger. CASTRO did not answer the call, but

17  typed a response at 11:17 a.m. In those communications and others exchanged that day,

18  CASTRO and the UC arranged a deal to take place in Kent, Washington.

19      44.     At approximately 1:45 p.m., the UC observed a vehicle pull up and park

20  next to him. The UC exited his vehicle, got into the vehicle's front passenger seat, and

21  greeted the same DTO courier who delivered the heroin to the UC during the first two

22  controlled buys. The UC and the courier completed their transaction, and at 1:54 p.m.,

23  CASTRO sent a large "thumbs up" graphic to the UC via Subject Account 1 on Facebook

24  messenger.

25  **Federal Search Warrant for Subject Account 1**

26      45.     On January 3, 2018, Special Agent Samuel Landis obtained a search

27  warrant from the United States District Court for the Western District of Washington for

28  Subject Account 1, believed to be used by CASTRO in order to network and facilitate

AFFIDAVIT OF Steve Meyer - 12
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  suspected drug transactions.  On January 17, 2018, during a search of the Facebook

2  Messenger portion of the returned warrant materials, Special Agent Landis found

3  numerous suspected drug conversations between CASTRO and individuals whom agents

4  believe, based on the content of those conversations and those individuals' respective

5  criminal histories, are his drug redistributors/customers.

6      46.    During a search of the "Cookies" portion of Subject Account 1, Special

7  Agent Landis found Subject Account 3 and Subject Account 4 listed as accounts linked to

8  Subject Account 1.  On February 27, 2018, he contacted Facebook Support and asked

9  how the accounts linked to each other, based on the data Facebook had provided.

10 Facebook Support staff informed me that Subject Account 1, Subject Account 3, and

11 Subject Account 4 were all accessed by the same electronic device (one that is capable of

12 accessing the World Wide Web) and under the same "cookie."  A "cookie" is a personal

13 identifier for a specific browser that links to particular web portal.  This means CASTRO

14 used the same electronic device to access Subject Account 1, Subject Account 3, and

15 Subject Account 4.  The electronic device CASTRO uses remembers his web signature or

16 "cookie" by storing his unique web browsing on Facebook.  Anytime CASTRO reuses

17 the same electronic device to browse the web, e.g., Facebook, the device remembers his

18 web identifiers for him.

19 ***Federal Search Warrant for Subject Accounts 1 Through 6***

20     47.    On March 8, 2018, Special Agent Landis obtained a search warrant from

21 the United States District Court for the Western District of Washington for Subject

22 Accounts 1 through 6, all of which he believed to be used by CASTRO in order to

23 network and facilitate suspected drug transactions.  On March 29, 2018, during a search

24 of the Facebook Messenger portion of Subject Accounts 1 through 3 and 5 through 6[1] of

25 the returned warrant materials, Special Agent Landis again found numerous suspected

26

27 [1] According to the Facebook Law Enforcement Response Team, Special Agent Landis's historical data request for
28 Subject Account 4 could not be processed because Subject Account 4 no longer existed.

AFFIDAVIT OF Steve Meyer - 13
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 drug conversations between CASTRO and individuals whom agents believe are his drug

2 redistributors/customers. Furthermore, during a search of the "Cookies" portion of

3 Subject Accounts 3 and 6, he found Subject Account 7 (registered under the name

4 "GINA MORRIS") listed as an account that was accessed by the same electronic device

5 and under the same "cookie" as the aforementioned accounts.

6      48.    When Special Agent Landis looked at Subject Account 7's friends list and

7 compared it to the other Subject Accounts' friend lists (with the exception of Subject

8 Account 4), he found that the accounts all had multiple friends in common. Among the

9 common friends were accounts that had been in contact with Subject Account 1, Subject

10 Account 5, and Subject Account 6 for the purposes of organizing suspected drug

11 transactions.

12 ***CASTRO Uses Subject Account 7 to Contact the CS***

13      49.    On April 9, 2018, CASTRO contacted CS1 using Subject Account 7 to

14 have CS1 help him register a white 2008 Honda Accord in Washington in exchange for

15 "stuff," or what Special Agent Landis believed to be heroin. CASTRO and CS1 arranged

16 the vehicle registration to take place on April 10, 2018

17      50.    During the morning hours of April 10, 2018, BPD Det. Ejde and Sergeant

18 Billy Renfro met with CS1 at a secure meeting location and searched the CS for any

19 contraband items, finding none. CASTRO contacted CS1 using Subject Account 7 to

20 finalize their plans. During these messaging exchanges, agents on surveillance at the

21 licensing office (located at 15600 Northeast 8th Street at the Bellevue Crossroads Mall)

22 did not see any of the known target vehicles in this investigation nor did they see the

23 white Honda Accord. Agents suspected CASTRO's associates might have been at a

24 different licensing office in Bellevue (13133 Bel-Red Road, based on CS1's prior

25 conversations with CASTRO). At about 10:00 a.m., agents brought CS1 to the licensing

26 office at the Crossroads Mall and maintained constant surveillance of CS1 from that point

27 onward. Agents outfitted CS1 with a recording/transmitting device (EMD) once he/she

28 was in place at the Crossroads Mall. At 10:17 a.m., CS1 electronically shared his/her

AFFIDAVIT OF Steve Meyer - 14
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  location with CASTRO and continued his/her messaging conversation with CASTRO

2  using Subject Account 7.  In the conversation, CS1 confirmed his/her current location

3  with CASTRO and, about twenty minutes later, agents saw another identified DTO

4  courier and a male later identified as Juan Jose HIGUERA Gonzalez arrive at the Bel-

5  Red Auto Licensing.

6      51.  After the registration process (and a subsequent lunch) was complete, the

7  courier, HIGUERA, and CS1 met briefly in the parking lot, where the courier provided

8  CS1 with approximately 20 grams of suspected heroin.  CS1 met with Special Agent

9  DelVecchio and Det. Ejde at a secure location and provided them with the 20 grams of

10  suspected heroin.  Special Agent DelVecchio and Det. Ejde searched CS1 for contraband

11  items and did not find any items during that search.  CS1 later told Special Agent

12  DelVecchio and Det. Ejde that the suspected heroin was the CS's "payment" for taking

13  care of the vehicle registration and insurance, as CS1 and CASTRO had discussed on

14  April 9, 2018.

15  ***Subject Account 8 Contacts CS***

16      52.  On April 27, 2018, CS1 contacted agents in regards to his/her recent

17  contact with CASTRO.  According to CS1, he/she believed CASTRO created a new

18  Facebook account in order to contact his suspected local drug contacts in the Western

19  Washington area.  After agents acquired the account information from CS1, agents

20  located Subject Account 8 (registered under the name "CHRIS HOLDFORD") on

21  Facebook and, during a search of Subject Account 8's friends list, found that the majority

22  of the people listed were also on the friends lists for Subject Accounts 1 through 7.

23  Given this similarity between all eight Subject Accounts and CASTRO's use of Facebook

24  accounts to communicate with his drug clientele (including CS1) in order to set up drug

25  deals, agents believe CASTRO created Subject Account 8 for the sole purpose of

26  connecting with his suspected drug clientele in order to further his suspected drug

27  transactions.

28

AFFIDAVIT OF Steve Meyer - 15
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

53.     On July 3, 2018, Special Agent Landis obtained a search warrant from the United States District Court for the Western District of Washington for Subject Account 8, which he believed CASTRO used in order to network and facilitate suspected drug transactions.  On July 19, 2018, during a search of the Facebook Messenger portion of the returned warrant materials, Special Agent Landis did not find any messages.  This was highly unusual based on past UC interactions with CASTRO over Facebook Messenger and information previously gathered from the returned warrant materials for Subject Accounts 1 through 7.  Special Agent Landis contacted Facebook support staff via email on July 20, 2018, to find out if there were any missing materials not included in the documents provided.  Days later, he received a phone call from Facebook's support staff.  During this call, Special Agent Landis explained that in many of his previously authorized requests, he had not experienced the absence of information.  Facebook support staff told him the user of Subject Account 8 may have deleted all of his conversations over Facebook Messenger.  According to Facebook's support staff, if a Subject Account user deletes his/her conversations over Facebook Messenger, Facebook cannot provide the information, even if a search warrant is executed on a Subject Account.  This is because Facebook simply does not store deleted Facebook Messenger messages/conversations.  However, with a preservation request, Facebook can preserve materials deleted by a Subject Account user and later produce them upon receipt of a court order (warrant).  With a preservation request, Facebook will store any deleted conversations for any Subject Account for up to 90 days for law enforcement personnel.

54.     Despite the absence of Facebook Messenger materials for Subject Account 8 from the search warrant return, Special Agent Landis did receive other data associated with the Subject Account.  Specifically, the phone number (TT20) associated with Subject Account 8 was one agents previously identified as being used by the CASTROs.  On July 10, 2018, agents conducted an undercover purchase of suspected heroin from the CASTRO DTO, through HIGUERA.  The UC contacted the CASTRO brothers (on TT20) shortly after 11:00 a.m. and asked for "2 pieces" (or 50 grams) of heroin.  The

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   CASTROs agreed to do the deal for $2,150.  The subsequent transaction between the UC
2   and HIGUERA lasted less than one minute.  The UC provided HIGUERA with $2,150 of
3   DEA buy money and HIGUERA provided the UC with a substance that field-tested
4   positive for the presence of heroin and weighed 83.4 gross grams (with packaging).

5   ***Discovery of Subject Account 9***

6       55.    During the search of the "Cookies" portion of the returned warrant
7   materials for Subject Account 8, Special Agent Landis found Subject Account 1, Subject
8   Account 3, Subject Account 6, Subject Account 7, and an account under the name
9   "RUDY JACKSON" (Subject Account 9) listed as accounts accessed by the same
10  electronic device and under the same "cookie."  Again, this indicates a very high
11  probability that the same person(s) (i.e., the CASTROs) is using all of these Subject
12  Accounts, including Subject Account 9, since the same electronic device (i.e., computer,
13  cell phone, or the like) is accessing all of the accounts.

14      56.    When Special Agent Landis examined Subject Account 9's friends list and
15  compared it to the other Subject Accounts' friend lists (with the exception of Subject
16  Account 4), he found that the accounts all had multiple friends in common.  Additionally,
17  agents have previously identified most of these "friends" as suspected drug customers,
18  further indicating the CASTROs are utilizing Subject Account 9 as a means of
19  connecting with their suspected drug customers.

20      57.    On July 23, 2018, Special Agent Landis submitted a preservation request
21  for Subject Account 9 through Facebook's law enforcement web portal in an effort to
22  capture future suspected drug related conversations over Subject Account 9, should the
23  CASTROs continue their pattern of deleting Facebook Messenger conversations as they
24  had apparently done with Subject Account 8.

25  ***Discovery of SUBJECT ACCOUNT 10***

26      58.    On August 15, 2018, Special Agent Landis obtained a search warrant from
27  the United States District Court for the Western District of Washington for Subject
28  Account 9, which I believe CASTRO used in order to network and facilitate suspected

AFFIDAVIT OF Steve Meyer - 17
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   drug transactions. When I examined Subject Account 9's friends list, it included seven

2   individuals who had a mutual friend named "STEVE.LARSON.750983" (SUBJECT

3   ACCOUNT 10).  Analysis of SUBJECT ACCOUNT 10's friends list with the previous

4   Subject Accounts' friends list (with the exception of Subject Account 4) revealed they all

5   had multiple friends in common.  Agents have previously identified most of these

6   "friends" as suspected drug customers of the CASTROs.

7        59.     Additionally, data from Subject Account 9 included a telephone number,

8   52-668-171-2538, which agents have previously identified as being used by the

9   CASTROs.  Based on phone toll analysis, 52-668-171-2538 is in contact with Devon

10  MEYER, who has consistently been on the friends lists for the Subject Accounts

11  discussed herein.  MEYER is also included on SUBJECT ACCOUNT 10's friends list,

12  further indicating the CASTROs are utilizing SUBJECT ACCOUNT 10.  Based on my

13  training and experience, and the information set forth in this Affidavit ,I believe there is

14  probable cause to believe that the CASTROs are utilizing SUBJECT ACCOUNT 10 for

15  the same purposes they utilized Subject Accounts 1 through 9, that is, to contact their

16  suspected drug customers.

17        **INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

18        60.     I anticipate executing this warrant under the Electronic Communications

19  Privacy Act, in particular Title 18, United States Code, Sections 2703(a), 2703(b)(1)(A)

20  and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the

21  government copies of the records and other information (including the content of

22  communications) particularly described in Section I of Attachment B.  Upon receipt of

23  the information described in Section I of Attachment B, government-authorized persons

24  will review that information to locate the items described in Section II of Attachment B.

25        61.·    As indicated in the Motion for Nondisclosure and Motion to Seal that

26  accompany this Affidavit, the government requests, pursuant to the preclusion of notice

27  provisions of Title 18, United States Code, Section 2705(b), that Facebook be ordered not

28  to notify any person (including the subscriber or customer to which the materials relate)

AFFIDAVIT OF Steve Meyer - 18
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  of the existence of this warrant for such period as the Court deems appropriate.  The

2  government submits that such an order is justified because notification of the existence of

3  this Order would seriously jeopardize the ongoing investigation.  Such a disclosure would

4  give the subscriber an opportunity to destroy evidence, change patterns of behavior,

5  notify confederates, or flee from prosecution.  Notifying our targets of the existence of

6  this investigation will likely cause them to destroy evidence, flee the jurisdiction, or alter

7  their methods, thus making it more difficult to dismantle the organization effectively.

8  Notice also could put the CS, UC, and agents working with them in danger

9        62.     It is further respectfully requested that this Court issue an order sealing all

10  papers submitted in support of this application, including the application and search

11  warrant, until such dates as provided in the proposed Order.  I believe that sealing this

12  document is necessary because the items and information to be seized are relevant to an

13  ongoing investigation.  Premature disclosure of the contents of this Affidavit and related

14  documents may have a significant and negative impact on the continuing investigation

15  and may severely jeopardize its effectiveness.

16  **COMMON CHARACTERISTICS OF DRUG TRAFFICKERS**

17        63.     Based on my training and experience, including experience obtained

18  through participation in this and other investigations involving the distribution of

19  controlled substances, including those targeting long-term conspiracies responsible for

20  the distribution of controlled substances, and based upon my consultation with other

21  experienced law enforcement agents and officers, I know that:

22        a.     Drug trafficking conspiracies, especially those involving large amounts of

23  narcotics and interstate shipments, usually take place over several months or years, and

24  continue to operate even when enforcement activity results in arrests and/or seizures of

25  drugs and/or money.

26        b.     Those involved in the distribution of illicit drugs often communicate by

27  telephone in connection with their illegal activities in order to set up meetings with

28

AFFIDAVIT OF Steve Meyer - 19
USAO 2017R01238

1  coconspirators, conduct drug transactions, or to arrange for the transportation drugs or

2  drug proceeds.

3                                    **CONCLUSION**

4        64.      Based upon the information which has been uncovered during the course of

5  this investigation, and on the advice, experience, knowledge of other agents and officers

6  involved in this investigation, I believe these facts establish probable cause to conclude

7  that SUBJECT ACCOUNT 10 has been used, and will continue to be used, to facilitate

8  violations of the Controlled Substances Act, specifically distribution of narcotics,

9  conspiracy, and related offenses in the Western District of Washington, and elsewhere, in

10  violation of the Controlled Substances Act, Title 21, United States Code, Sections 841

11  and 846.

12

13                                Steven Meyer,

14                                Special Agent

15                                Drug Enforcement Administration

16

17  Subscribed and sworn to before me this _____ day of October, 2018.

18

19

20                                J. RICHARD CREATURA

21                                UNITED STATES MAGISTRATE JUDGE

22

23

24

25

26

27

28

AFFIDAVIT OF Steve Meyer - 20
USAO 2017R01238

1

## **ATTACHMENT A**

2

### **Property to Be Searched**

3        This warrant applies to information associated with the following account,

4   identified by Facebook user ID: steve.larson.750983 ("SUBJECT ACCOUNT 10"), for

5   all such information that is stored at premises owned, maintained, controlled, or operated

6   by Facebook, a company headquartered in Menlo Park, California.  This warrant is

7   limited to information created after June 16, 2016.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

AFFIDAVIT OF Steve Meyer - 21
USAO 2017R01238

## **ATTACHMENT B**

### **Particular Things to be Seized**

**I.      Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under Title 18, United States Code, Section 2703(f), Facebook is required to disclose the following information to the government for the user IDs listed in Attachment A ("SUBJECT ACCOUNT 10"):

   A.   The following information about the customer or subscriber of SUBJECT ACCOUNT 10:

      (a)   All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

      (b)   All activity log for SUBJECT ACCOUNT 10, and all other documents showing the user's posts and other Facebook activities;

      (c)   All photos and videos in their original format, including EXIF information (metadata), uploaded by that user ID and all photos and videos in their original format, including EXIF information (metadata), uploaded by any user that have that user tagged in them;

      (d)   All other records of communications and messages made or received by the user, including all private messages, chat history, calling history, and pending "Friend" requests;

      (e)   All "check ins" and other location information;

      (f)   All IP logs, including all records of the IP addresses that logged into SUBJECT ACCOUNT 10;

AFFIDAVIT OF Steve Meyer - 22
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    (g)    All past and present lists of friends created by SUBJECT ACCOUNT 10;

2    (h)    All records of Facebook searches performed by SUBJECT ACCOUNT 10;

3    (i)    The length of service (including start date);

4    (j)    The means and source of payment for such service (including any credit
5           card or bank account number) and billing records;

6    (k)    All records pertaining to communications between Facebook and any
7           person regarding the user or the user's Facebook account, including
8           contacts with support services and records of actions taken;

9    (l)    Names (including subscriber names, Facebook user IDs, and screen
10          names);

11   (m)    Addresses (including mailing addresses, residential addresses, business
12          addresses, and e-mail addresses);

13   (n)    Local and long distance telephone connection records;

14   (o)    Linked accounts; and

15   (p)    Telephone or instrument numbers or identities (including MAC addresses).

16   B.  All records and other information (not including the contents of communications)
17       relating to SUBJECT ACCOUNT 10, including:

18   (a)    Records of user activity for each connection activity for each connection
19          made to or from SUBJECT ACCOUNT 10, including log files; messaging
20          logs; the date, time, length, and method of connections; data transfer
21          volume; user names; and source and destination of Internet Protocol
22          addresses;

23   (b)    Information about each communication sent or received by SUBJECT
24          ACCOUNT 10, including the date and time of the communication, the
25          method of the communication (such as source and destination email
26          addresses, IP addresses, and telephone numbers); and

27   (c)    Records of any Facebook accounts that are linked to SUBJECT
28          ACCOUNT 10 by machine cookies (meaning all Facebook user IDs that

AFFIDAVIT OF Steve Meyer - 23
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1              logged into Facebook by the same machine or device as SUBJECT

2              ACCOUNT 10).

3  **II.    Information to be seized by the government**

4        All information described above in Section I that relates to the ongoing narcotics

5  investigation described in the Affidavit, including, for the user ID identified on

6  Attachment A, information pertaining to the following matters:

7              (a) Any content including e-mails, messages, texts, photographs (including

8                  metadata), videos (including metadata), visual images, documents,

9                  spreadsheets, address lists, contact lists or communications of any type

10                  which could be used to identify the user and or their location.

11              (b) Records relating to who created, used, or communicated with the user ID,

12                  including records about their identities and whereabouts.

13              (c) All subscriber records associated with SUBJECT ACCOUNT 10, including

14                  names, addresses, local and long distance telephone connection records, or

15                  records of session times and durations, length of service (including start

16                  date) and types of service utilized, telephone or instrument number or other

17                  subscriber number or identity, including any temporarily assigned network

18                  address, and means and source of payment for such service including any

19                  credit card or bank account number.

20              (d) Any and all other log records, including IP address captures, associated

21                  with SUBJECT ACCOUNT 10; and

22              (e) Any records of communications between Facebook and any person about

23                  issues relating to the account, such as technical problems, billing inquiries,

24                  or complaints from other users about SUBJECT ACCOUNT 10.  This is to

25                  include records of contacts between the subscriber and the provider's

26                  support services, as well as records of any actions taken by the provider or

27                  subscriber as a result of the communications.

28

AFFIDAVIT OF Steve Meyer - 24
USAO 2017R01238

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800